```
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION
------------------------------------------------------ x
In re:                                                 :   Chapter 11
                                                       :
METRO MATTRESS CORP.                                   :   Case No. 24-_____ (WAK)
                                                       :
                              Debtor.                  :
------------------------------------------------------ x
```

## DECLARATION OF DINO CIFELLI IN SUPPORT OF
## CHAPTER 11 PETITION AND FIRST DAY MOTIONS

I, DINO CIFELLI, declare, pursuant to Section 1746 of title 28 of the United States Code, that:

1. I am the President and Chief Executive Officer of Metro Mattress Corp. ("MM" or the "Debtor"). As such, I am familiar with the day-to-day operations, business and financial affairs of the Debtor. I have over 30 years of experience in the furniture and bedding industries and have previously held leadership positions with Raymour & Flanigan Furniture, Furniture First, Sleepy's, and Levitz. I have held the role of President and Chief Executive Officer of MM since March 2024.

2. I submit this declaration (i) in support of the petition of the Debtor for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) in support of the various contemporaneously-filed requests for relief in the form of motions and applications (the "First Day Motions"), and (iii) to assist the Court and other interested parties in understanding the circumstances giving rise to the commencement of this chapter 11 case. I have reviewed the First Day Motions or have otherwise had their contents explained to me, and it is my belief that the relief sought therein is essential to allow for continued operating and sale of certain assets of the Debtor.

1

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by employees working under my supervision, or my opinion based upon experience, knowledge and information concerning the operations of the Debtor and the furniture and bedding industry. If called to testify, I would testify competently to the facts set forth in this declaration. Unless otherwise indicated, the financial information contained herein is unaudited and provided on a consolidated basis.

## COMMENCEMENT OF THE BANKRUPTCY PROCEEDING

4. On September 4, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor intends to continue in possession of its property while it restructures and implements a sustainability plan.

## THE DEBTOR'S BUSINESS AND FINANCIAL DECLINE

5. MM is a corporation organized and existing under the laws of the State of New York and is a leading bedding and bedding accessories retailer in New York and New England, with approximately 70 retail store locations and 3 warehouses. MM's original footprint was focused in New York State, but it recently expanded its reach into New Hampshire, Massachusetts, Connecticut, and Rhode Island.

6. Unfortunately, the New England expansion did not generate the anticipated income such that the 23 new stores became a drag on the performance of the company as a whole. Higher operating costs, insufficient market saturation, and inefficiencies of scale all contributed to render the New England stores unprofitable.

7. Accordingly, MM has determined that it is in the best interest of the enterprise and its creditors to close its New England operations and one underperforming New York store and

refocus its resources on its productive New York locations. MM believes that by focusing on the New York stores, it will be able to maintain operations, return to profitability, and maximize the distribution to its creditors.

8. MM has elected to commence a Chapter 11 restructuring proceeding to provide it with the necessary relief while it implements its sustainability model.

### THE DEBTOR'S DEBT STRUCTURE

9. The Debtor's senior secured lender is Community Bank, N.A. ("Community Bank"). Community Bank has made a number of credit facilities available to the Debtor, including a $2 million term loan advanced pursuant to a note and related documents dated December 24, 2023, and a $4 million line of credit loan advanced pursuant to note and related documents also dated December 24, 2023.

10. Community Bank has also advanced funds for specific purposes, such as in connection with the issuance of a letter of credit or to facilitate the purchase, expansion, renovation or refinancing of specific locations, as follows:

| Borrower | Note Amount | Date of Note |
|---|---|---|
| MM and 3061 Route 417, LLC | $624,000 | 9/20/2017 |
| MM and 1270 Niagara Falls Blvd. LLC | $760,000 | 1/3/2022 |
| MM and 41 Wolf Road, LLC | $840,000 | 9/27/2018 |
| MM | $900,000 – unfunded | 9/28/2023 |
| MM and 316 Route 9W, LLC | $1,760,000 | 9/13/2016 |

11. Each of the loans advanced by Community Bank is secured by a first priority lien on essentially all of MM's tangible and intangible property and is guaranteed by one or more affiliated entities. The loans advanced in connection with specific locations are typically secured by a mortgage on the co-borrower's premises, and by an assignment of rents relating to the premises.

12. MM also obtained a loan in the amount of $150,000 from the SBA on or about June 14, 2020. The SBA loan is secured by a second priority lien on essentially all of MM's tangible and intangible property.

### THE DEBTOR'S BANKRUPTCY PLAN

13. The Debtor believes the closure of its New England stores combined with the continued operation of the vast majority of its New York stores will result in a sustainable business. The Debtor intends to use this chapter 11 proceeding and the protections of the Bankruptcy Code to conduct an orderly reorganization using the above-described model as its operational roadmap.

### THE FIRST DAY MOTIONS

14. On the Petition Date, the Debtor filed the following motions (collectively hereafter the "First Day Motions"):

   a. Motion Pursuant to Sections 105(a), 363(c), and 364(a) of the Bankruptcy Code for Authorization to (I) Continue to Operate the Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Waive Requirements of Section 345(b) of the Bankruptcy Code (the "Bank Account Motion");

   b. Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Debtor in Possession Financing (the "Cash Collateral and DIP Financing Motion");

   c. Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing Payment of Wages, Compensation, and Employee Benefits (the "Wages Motion");

   d. Motion of the Debtor Pursuant to Section 105(a) and 541 of the Bankruptcy Code for Authority to Pay Prepetition Sales and Use Taxes (the "Taxes Motion");

   e. Motion for Entry of an Order (I) Authorizing the Debtor to (A) Maintain Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (B) Granting Related Relief (the "Customer Programs Motion"); and

   f. Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free

4

and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief (the "Store Closing Motion").

I have personal knowledge of the contents of these motions, and believe that the relief requested in the First Day Motions is both in the best interests of the estate and its creditors, and is essential to the Debtor's ability to continue the operation of its businesses and control of its assets.

15. In the **Bank Account Motion**, the Debtor requests final authorization pursuant to Sections 105(a), 363(c)(1), and 364(a) of the Bankruptcy Code and Bankruptcy Rule 6003, to maintain the Debtors' existing bank accounts (the "Bank Accounts") and maintain the Debtor's existing business forms.

16. The Debtor believes that having to close its current bank accounts will significantly interfere with its retail sales and credit facilities provided by Community Bank. The Debtor's main accounts are located at Community Bank and all receipts from retail sales are deposited to accounts, including but not limited to accounts at Community Bank on a daily basis. Account balances are swept by Community Bank each weekday night with proceeds applied against the $4 million line of credit facility provided by Community Bank. As MM issues checks or authorizes ACH or other electronic funds transfers to pay its ordinary expenses, Community Bank makes funds available under the line of credit to pay such expenses. While Community Bank is not on the U.S. Trustee's approved depository list, MM's account balances are minimal due to the sweep feature described above.

17. Accordingly, the Debtor seeks authority to continue to use its existing bank accounts and related forms but to designate the accounts as "Debtor-in-Possession" or "DIP" accounts.

18. In the **Cash Collateral and DIP Financing Motion**, the Debtor seeks authorization to continue status quo cash collateral and line of credit usage for ordinary course business

Document      Page 6 of 9

operations – primarily meeting payroll obligations to its employees and paying for the ordinary expenses incurred in operating the business post-petition. The Debtor also seeks to grant a rollover replacement liens to Community Bank and the U.S. Small Business Administration (the "SBA"), as secured creditors, to the same extent, validity and priority as each creditor possessed prepetition in the Debtor's assets, together with a determination that the rollover and replacement liens adequately protects the interests of Community Bank and the SBA in MM's assets.

19. The Debtor requires immediate access to cash collateral and the Community Bank line of credit to avoid an immediate shutdown and to prevent irreparable harm to its business, employees, creditors and estate.

20. A budget projection showing anticipated income, expenses and line of credit utilization is annexed hereto as **Exhibit A**.

21. In the **Wages Motion**, the Debtor seeks immediate authority to pay its employees their outstanding prepetition wages, benefits and other compensation as well as to remit all payroll deductions, withholding taxes and costs and expenses incident to the foregoing payments and contributions (the "Payroll Payments").

22. The Debtor believes that if it is not granted immediate authority to make the Payroll Payments that its work force will not remain on the job, which will force an immediate closure of the Debtor's stores and could result in irreparable harm to both the Debtor's estate and its creditors.

23. In the **Taxes Motion**, the Debtor seeks authority to remit taxes it may have collected from others (such as sales and withholding taxes) to the appropriate taxing authority.

24. In the **Customer Programs Motion**, the Debtor seeks authority to maintain and administer in the ordinary course of business its customer-related programs and to continue to honor certain preparation customer-related obligations related thereto. Such programs are critical

to the smooth operation of the Debtor's business and include, but are not limited to, honoring any prepetition customer deposits and comfort upgrade programs.

25. In the **Store Closing Motion**, the Debtor seeks authority to conduct store closing sales at the locations and pursuant to the terms specified in such motion. Authority to conduct such sales will maximize the value of the Debtor's inventory at those locations while also reducing the ongoing expenses of maintaining operations at the locations slated to close.

26. I respectfully request that all of the relief requested in the First Day Motions, and such other relief as maybe just and proper, be granted.

I, the undersigned, Dino Cifelli, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: September 4, 2024

_____
Dino Cifelli

# EXHIBIT A

## METRO MATTRESS CORP
## FORECASTED CASH FLOW
## FORECASTED THROUGH 12/31/2024

|  | Sep | Oct | Nov | Dec |
|---|---|---|---|---|
| Cash, Beg. (LOC Balance) | (3,900,000) | (3,830,894) | (3,881,041) | (3,842,075) |
| **Sources of Cash:** | | | | |
| Cash In From Sales | 4,100,000 | 3,450,000 | 3,600,000 | 3,500,000 |
| **Total Cash Available** | 200,000 | (380,894) | (281,041) | (342,075) |
| **Cash Disbursements:** | | | | |
| Purchases Bedding | 1,100,000 | 950,000 | 950,000 | 900,000 |
| Store Rents | 470,000 | 430,000 | 430,000 | 430,000 |
| Advertising | 296,000 | 241,500 | 252,000 | 245,000 |
| Other accounts payable | 736,950 | 641,497 | 655,687 | 646,227 |
| Payroll | 1,071,944 | 933,149 | 957,347 | 941,215 |
| Sales Tax | 328,000 | 276,000 | 288,000 | 280,000 |
| Principal Loan Pmts | 28,000 | 28,000 | 28,000 | 28,000 |
| Total Cash Disbursements | 4,030,894 | 3,500,146 | 3,561,034 | 3,470,442 |
| **Cash, End of month** | (3,830,894) | (3,881,041) | (3,842,075) | (3,812,518) |