**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
      METRO MATTRESS CORP.                                   :    Case No. 24-_____ (WAK)
                                                             :
                                        Debtor.              :
------------------------------------------------------------ x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING SALES,**
**WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND**
**ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

TO THE HONORABLE CHIEF UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtor and debtor in possession (the "Debtor") respectfully states the following in support of this motion (this "Motion"):[1]

**RELIEF REQUESTED**

1.      The Debtor seeks entry of orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):  (a) authorizing and approving the continuation or initiation of store closing or similar themed sales, with all such sales to be free and clear of all liens, claims, and encumbrances (the "Store Closing Sales") at the stores identified on Schedule 1 to **Exhibit A** (the "Closing Locations"), in accordance with the terms of the store closing sale guidelines (the "Sale Guidelines"), attached as Schedule 2 to **Exhibit A**; and (b) granting related relief.  In addition, the Debtor requests that the Court schedule a final hearing within approximately 30 days after the commencement of this chapter 11 case to consider entry of the Final Order.

---

[1] A detailed description of the Debtor and its businesses, including the facts and circumstances giving rise to the Debtor's chapter 11 case, is set forth in the *Declaration of Dino Cifelli in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Northern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The Debtor confirms its consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 6004-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of New York (the "Local Rules").

## BACKGROUND

5.      The Debtor operates a chain of approximately 70 mattress and bedding accessory stores in New York and New England.

6.      On September 4, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no official committees have been appointed or designated.

### I.      The Store Closings.

7.      As discussed in the First Day Declaration, the Debtor has determined that its expansion into the New England market with approximately 23 stores was ill advised, and has

resulted in a financial drain on the resources of the company.  The combination of rent expense, labor costs, and lack of market saturation for the Closing Stores created a financial drain that threatened the existence of the company as a whole.  After extensive analysis of the cost structure of the New England stores, the Debtor has made the determination that closing those New England stores, one New England warehouse, and one underperforming New York store is in the best interests of the company and its creditors.

8.      The Debtor's intend to maximize the value of the inventory at the Closing Stores by (i) conducting a self-managed strategic mark-down plan followed by a clearance sale; and/or (ii) transferring inventory to the Debtor's other store locations.

9.      After the completion of these asset dispositions, the Debtor will then vacate the Closing Stores and return possession of the premises to the respective landlords.[2]

10.     This Motion essentially seeks authority for the Debtor to continue its prepetition store closure process, including through conducting Store Closing Sales pursuant to the proposed Interim and Final Orders and the Sale Guidelines incorporated therein.

## II.     The Sale Guidelines.

11.     To maximize the value of the Debtor's inventory in the stores (together, the "Closing Store Assets") and effectuate the Store Closings, the Debtor seeks approval of streamlined procedures to sell the Closing Store Assets free and clear of liens, claims, and encumbrances (with the proceeds thereof distributed in accordance with the DIP Orders).[3]

---

[2] The Debtor will soon be filing the *Debtor's Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Unexpired Leases of Non-Residential Real Property and (B) Abandonment of any Personal Property, Effective as of the Rejection Date and (II) Granting Related Relief* (the "Lease Rejection Motion").  This Motion seeks independent relief and does not request authorization to reject any executory contract or unexpired lease of the Debtor.

[3] "DIP Orders" means any interim or final orders of the Court granting the Debtor's motion for approval of use of cash collateral and utilization of its Community Bank line of credit.

12.     The Debtor seeks interim approval of the Sale Guidelines to allow the continuation and commencement of the Sales at the Closing Stores.

13.     The Debtor has determined, in the exercise of its reasonable business judgment that the Sale Guidelines will provide the best and most efficient means of selling the Closing Store Assets to maximize their value to the estate.

**III.     Liquidation Sale Laws and Dispute Resolution Procedures.**

14.     Certain jurisdictions in which the Debtor operates stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including, without limitation, state and local laws, statutes, rules, regulations, and ordinances (collectively, the "Liquidation Sale Laws").  The Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, bulk sale restrictions, and augmentation limitations that would otherwise apply to the Store Closings.  Such requirements hamper the Debtor's ability to maximize value in selling the Closing Store Assets.  Subject to the Court's approval, the Debtor intends to conduct the Store Closings in accordance with the Sale Guidelines, and to the extent the Sale Guidelines conflict with the Liquidation Sale Laws, the Sale Guidelines shall control.

15.     For the orderly resolution of any disputes between the Debtor and any Governmental Units (as defined in section 101(27) of the Bankruptcy Code) arising due to the Sale Guidelines and the alleged applicability of any Liquidation Sale Laws, the Debtor respectfully requests that the Court approve and authorize the Debtor to implement the following dispute resolution procedures (the "Dispute Resolution Procedures"), as set forth in the Interim and Final Orders:

   i.     Provided that the Sales are conducted in accordance with the Interim Order, any Final Order, and the Sale Guidelines, the Debtor and the Debtor's

landlords shall be deemed to be in compliance with any requirements of any and all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closings or the Sales; *provided* that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtor shall continue to be required to comply with applicable Safety Laws and applicable General Laws (as defined in the Interim and Final Orders), subject to any applicable provisions of the Bankruptcy Code and federal law, and nothing in the Interim Order or the Final Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.    Within five business days after entry of the Interim Order, or as soon as reasonably practicable thereafter, the Debtor will serve by first-class mail copies of the Interim Order, the proposed Final Order, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; and (b) the landlords for the Closing Stores (collectively, the "Dispute Notice Parties").

iii.   To the extent that there is a dispute arising from or relating to the Sales, the Interim Order or Final Order, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Barclay Damon LLP, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, New York 13202, Attn: Jeffrey A. Dove, Esq.; (b) the United States Trustee for the Northern District of New York, Attn: Erin Champion, Esq., 10 Broad Street, Room 105, Utica, New York 13501; (c) counsel to any statutory committee appointed in this chapter 11 case; and (d) the affected landlord or its known counsel. If the Debtor and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv.    If a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtor, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of the Interim Order nor the Final Order, nor the conduct of the Debtor pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtor's ability to conduct

or to continue to conduct Sales and Store Closings pursuant to the Interim Order or the Final Order, as applicable, absent further order of the Court. Upon the entry of the Interim Order or Final Order, the Debtor shall be authorized to conduct the Sales and Store Closings pursuant to the terms of the Interim Order or the Final Order, as applicable, and the Sale Guidelines, and to take all actions reasonably related thereto or arising in connection therewith.   The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v.      If, at any time, a dispute arises between the Debtor and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iii) and (iv) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

## IV.    Contractual Restrictions.

16.    The Debtor also requests a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtor from maximizing value through the Store Closings and Sales.  In certain cases, the contemplated Store Closings and Sales may be inconsistent with certain provisions of leases, subleases, or other agreements or documents with respect to the premises in or upon which the Debtor operates, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (*e.g.*, "go dark" provisions and landlord recapture rights), or other similar agreements, documents, or provisions (collectively, "Contractual Restrictions").  Such restrictions would also hamper the Debtor's ability to maximize value in selling Closing Store Assets.

17.    The Debtor also requests that no person or entity, including, without limitation, utilities, landlords, shopping center managers and personnel, creditors, and all persons acting for

or on their behalf shall interfere with or otherwise impede the conduct of the Store Closings, the

Sales or institute any action against the Debtor in any court (other than in the Court) or before any

administrative body that in any way directly or indirectly interferes with, obstructs, or otherwise

impedes the conduct of the Store Closings, the Sales, or the advertising and promotion (including

through the posting of signs) of the Sales.

**<u>BASIS FOR RELIEF</u>**

**I.    The Debtor Has a Valid Business Justification for the Sales of the Closing
       Store Assets.**

18.    Section 363(b)(1) of the Bankruptcy Code, which governs asset sales outside of a

debtor's ordinary course of business, provides that "the trustee, after notice and a hearing, may

use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C.

§ 363(b)(1).   When selling assets outside of the ordinary course of business, a debtor must

articulate a valid business justification to obtain court approval.  *See, e.g., Myers* v. *Martin (In re*

*Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citation omitted); *In re Abbotts Dairies, Inc.,* 788 F.2d

143, 147-48 (3d Cir. 1986).   When a debtor demonstrates a valid business justification for a

decision, a strong presumption arises "that in making [the] business decision the directors of [the

company] acted on an informed basis, in good faith and in the honest belief that the action taken

was in the best interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated*

*Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the

Delaware business judgment rule has "vitality by analogy" in chapter 11).

19.    Store closing or liquidation sales are a routine occurrence in chapter 11 cases

involving retail debtors.  *See, e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr.

D.N.J. June 7, 2023) (authorizing procedures for store closing sales); *In re Christopher & Banks*

*Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds,*

*Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 10, 2020) (same); *In re SLT Holdco, Inc.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods, Inc.,* No. 2014179 (VFP) (Bankr. D.N.J. June 25, 2020) (same).

20.     Sufficient business justification exists to approve the proposed Sales of the Closing Store Assets under section 363(b)(1).  The Debtor has determined that the Sales represent the best alternative to monetize the Closing Store Assets and maximize the value received by the Debtor on account thereof.  First, delay in commencing any Sales would diminish the value realizable through the sale of the Closing Store Assets.  Most if not all of the Closing Stores fail to generate positive cash flow and therefore are a drain on liquidity.  Accordingly, the Debtor will realize a near-term liquidity improvement through the Store Closings and related Sales.  Second, uninterrupted and orderly Sales will allow the Debtor to timely reject leases associated with the Closing Stores and, therefore, avoid the accrual of unnecessary administrative expenses for rent and related costs.  Suspension of the Sales until entry of the Final Order may cause the Debtor to incur claims for rent at many of these stores for another month, potentially costing the estate significant amounts of rent each month.

## II.     The Court Should Approve the Sale Guidelines.

21.     The Court may authorize the Debtor to consummate the Store Closings pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

22.     As discussed herein, pursuant to section 363(b) of the Bankruptcy Code, for the purpose of conducting the Store Closings, the Debtor needs only show a legitimate business justification for the proposed action.  *See, e.g.*, *Martin*, 91 F.3d at 395 (citation omitted).

23.     In addition, the Court may authorize the Store Closings based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Under section 105(a), courts may authorize any action that is essential to the continued operation of a debtor's business.  *See, e.g.*, *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (holding that a court may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor); *In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (same).

24.     The relief requested by this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  The Debtor believes that the Sale Guidelines represent the most efficient and appropriate means of maximizing the value of the Closing Store Assets, while balancing the potentially competing concerns of landlords and other parties in interest.

25.     Furthermore, ample business justification exists to conduct the Store Closings. Prior to the Petition Date, the Debtor engaged in an in-depth review of its store footprint to identify specific store locations for closure to eliminate their ongoing negative impact on the Debtor's financial performance and to improve the Debtor's liquidity.  This process has resulted in the Debtor's identification of the Closing Stores.

26.     Delay in consummating the Store Closings would diminish the value realized through monetization of the Closing Store Assets for a number of reasons, chief among them that the Closing Stores are a drain on liquidity.  Thus, the Debtor will realize a near-term liquidity improvement upon the sale of the Closing Store Assets and the termination of operations at the Closing Stores.  Further, the swift and orderly consummation of the Store Closings will allow the Debtor to timely reject the applicable store leases, and therefore avoid the accrual of unnecessary administrative expenses for rent payment.

27.     Courts have routinely approved sale guidelines in chapter 11 cases.  *See, e.g.*, *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (authorizing debtors, pursuant to sections 105(a) and 363(b), to conduct store closings in accordance with court-approved sale guidelines); *In re Tops Holding II Corporation*, No. 18-22279 (RDD) (Bankr. S.D.N.Y. May 10, 2018) (same); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. Jul. 28, 2015) (same).

## III.    The Court Should Approve the Sale of the Closing Store Assets Free and Clear of all Liens, Encumbrances, and Other Interests under Section 363(f) of the Bankruptcy Code.

28.     The Debtor requests approval to sell the Closing Store Assets on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code.  A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:  (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal

or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).

29.     The Debtor anticipates that all holders of such liens will consent to the Sales because they provide the most effective, efficient, and timely approach to realizing proceeds for, among other things, the repayment of amounts due to such parties.  Subject to the terms of the DIP Orders, any and all liens on the Closing Store Assets sold through the Sales would attach to the remaining net proceeds of such sales with the same force, effect, and priority as such liens currently have on such assets.  Moreover, all lienholders have previously allowed the sale of the Debtor's inventory free and clear of their liens.

30.     Accordingly, the Sales of the Closing Store Assets satisfy the requirements of section 363(f) of the Bankruptcy Code and should, therefore, be free and clear of any liens, claims, encumbrances, and other interests.

## IV.    The Court Should Waive Compliance with Applicable State Laws and Approve the Dispute Resolution Procedures.

31.     The Debtor's ability to conduct the Sales in accordance with the Sale Guidelines and without complying with Applicable State Laws is critical to the Sales' success.  Many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales.

32.     To eliminate the time, delay, and expense associated with the administrative actions and procedures necessary to comply with the Applicable State Laws, the Debtor proposes the Sale Guidelines to streamline the administrative burdens on its estate while still adequately protecting the broad and varied interests of both landlords and applicable governmental agencies charged

with enforcing any Liquidation Sale Laws that may apply to the Store Closings.  Accordingly, the

Debtor believes the Sale Guidelines mitigate any concerns that its landlords or governmental

agencies may raise with respect to the Store Closings, and therefore, the requested relief complies

with any applicable Liquidation Sale Laws.

33.     There is strong support for granting the Debtor the authority to not comply with the

Liquidation Sale Laws, subject to the Sale Guidelines.  *First*, it is generally accepted that many

state statutes and regulations provide that, if a liquidation or bankruptcy sale is court-authorized,

a company need not comply with Liquidation Sale Laws.  *See, e.g.*, N.Y. Gen. Bus. Law § 584(a)

(so providing.)  *Second*, pursuant to section 105(a) of the Bankruptcy Code, the Court has the

authority to permit the Store Closings to proceed notwithstanding any contrary Applicable State

Laws as it is essential to the continued operation of the Debtor's business.  *Third*, this Court will

be able to supervise the Store Closings because the Debtor and its assets are subject to this Court's

exclusive jurisdiction.  *See* 28 U.S.C. § 1334.  Accordingly, creditors and the public interest are

adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of the

Court.

34.     Further, bankruptcy courts have consistently recognized, with limited exception,

that federal bankruptcy law preempts state and local laws that contravene the underlying policies

of the Bankruptcy Code.  *See Belculfine v. Aloe (In re Shenango Group. Inc.),* 186 B.R. 623, 628

(Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal

obligations pursuant to the bankruptcy code. . . .  [A] state statute . . . cannot place burdens on [a

debtor] where the result would contradict the priorities established by the federal bankruptcy

code."), *aff'd,* 112 F.3d 633 (3d Cir. 1997).

35.     Courts in some jurisdictions have found that preemption of state law is not appropriate if the laws deal with public health and safety. *See Baker & Drake. Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake. Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure). Nevertheless, preemption is appropriate where, as is the case here, the only state laws involved concern economic regulation rather than the protection of public health and safety. *See id.* at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

36.     Under the circumstances of this chapter 11 case, enforcing the strict requirements of the Liquidation Sale Laws would undermine the Bankruptcy Code's fundamental value-maximization imperative by placing constraints on the Debtor's ability to maximize the value of estate assets for the benefit of creditors. Accordingly, authorizing the Sales without the delays and burdens associated with compliance with Liquidation Sale Laws is necessary and appropriate. The Debtor does not seek a general waiver of all state and local law requirements, but only those that apply specifically to retail liquidation sales. Indeed, the requested waiver is narrowly tailored to facilitate the successful consummation of the Sales. Finally, the Dispute Resolution Procedures provide an orderly means for resolving any disputes arising between the Debtor and any Governmental Units with respect to the applicability of any Liquidation Sale Laws, and should therefore be approved.

37.     Further, courts have routinely recognized that the Bankruptcy Code preempts certain state laws and have granted relief similar to that requested herein. *See, e.g., In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (authorizing debtors to conduct

13

store closing sales under the terms of the order and finding that "no further approval, license, or permit of any Governmental Unit shall be required").

**V.      The Court Should Waive Compliance with Contractual Restrictions.**

38.      Certain of the Debtor's leases governing the premises of the Closing Stores may contain provisions purporting to restrict or prohibit the Debtor from conducting store closing, liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code. *See In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (determining that enforcement of such lease restrictions would "contravene overriding federal policy requiring [the debtor] to maximize estate assets . . . ."); *In re R.H. Macy and Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where the debtor sought to conduct a liquidation sale).

39.      Thus, to the extent that such provisions or restrictions exist in any of the leases of the Closing Stores, the Debtor requests that the Court authorize the Debtor to conduct Sales at the Closing Stores without interference by any landlords or other persons affected, directly or indirectly, by the Sales.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003(b) ARE SATISFIED

40.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtor's continuation and timely commencement of Store Closings (and related Sales) is critical to maximize the value of the Closing Store Assets, and any delay in granting the relief requested could result in material erosion of such value and cause irreparable harm.  Furthermore, failure to receive the requested relief during the first 30 days of this chapter 11 case entails the same risk.  The Debtor's ability to timely carry out the Store Closings without interruption is vital to maximize the value of the Closing Store Assets for the benefit of the Debtor's creditors — and thus foundational to the Debtor's successful restructuring. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

41.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

42.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to

pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

43.     No prior request for the relief sought in this motion has been made to this or any other court.

## NOTICE

44.     The Debtor will provide notice of this motion to the following parties and/or their respective counsel, as applicable:  (a) the office of the United States Trustee for the Northern District of New York; (b) the Debtor's 20 largest unsecured creditors; (c) the secured creditors holding a security interest in the Sale Assets and their counsel; (d) the Attorneys General in the states where the Debtor conducts its business operations; (e) the landlords for the Closing Stores; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:    September 4, 2024
          Syracuse, New York

**BARCLAY DAMON LLP**
*Proposed Counsel to Debtor and*
*Debtor-in-Possession*

By*:*    */s/Jeffrey A. Dove*
Jeffrey A. Dove
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone:  (315) 413-7112
Email:  jdove@barclaydamon.com

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

----------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
    METRO MATTRESS CORP.                      :   Case No. 24-_____ (WAK)
                                                                 :
----------------------------------------------Debtor.------------ x

**INTERIM ORDER (I) AUTHORIZING AND APPROVING**
**THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES**
**TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND**
**ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances,, and (II) Granting Related Relief* (the "Motion"),[1] seeking entry of an interim order (this "Interim Order"):  (a) authorizing and approving the continuation or initiation of store closing or similar themed sales (the "Store Closing Sales") at the stores identified on **Schedule 1** attached hereto (collectively, the "Closing Stores"); (b) providing that such sales shall

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

be free and clear of all liens, claims, and encumbrances (the "Sales"), in accordance with the terms

of the store closing sale guidelines (the "Sale Guidelines"), attached as **Schedule 2** hereto;

(c) scheduling a final hearing to consider approval of the Motion on a final basis, and (d) granting

related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157 and 1334; and this Court having found that venue of this proceeding and the Motion

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

the Debtor's notice of the Motion was appropriate under the circumstances and no other notice

need be provided; and this Court having reviewed the Motion and having heard the statements in

support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor **IT IS HEREBY FOUND AND

DETERMINED THAT**:[1]

A.    The Debtor has advanced sound business reasons for adopting the Sale Guidelines,

on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing.

B.    The Sale Guidelines, which are attached hereto as **Schedule 2**, are reasonable and

appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an

efficient means for the Debtor to dispose of the Closing Store Assets, and are in the best interest

of the Debtor's estate.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

C.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate and the Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

D.      The Store Closing Sales are in the best interest of the Debtor's estate.

E.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

F.      The entry of this Interim Order is in the best interests of the Debtor and its estate, creditors, interest holders, and all other parties in interest herein; and now therefore it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an interim basis to the extent set forth herein.

2.      The Final Hearing on the Motion will be held on _____, **2024 at** _____ **(Eastern Standard Time)**.  Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the following parties on or before _____, **2024 at 4:00 p.m. (Eastern Standard Time)**:  (a) Barclay Damon LLP, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, New York 13202, (Attn:  Jeffrey A. Dove); (b) Lemery Greisler LLC, 677 Broadway, 8th Floor, Albany, New York 12207 (Attn: Meghan Breen and Paul Levine), (c) the United States Trustee for the Northern District of New York, 10 Broad Street, Room 105, Utica, New York 13501 (Attn:  Erin Champion).

3.      To the extent any conflict between this Interim Order and the Sale Guidelines, the terms of this Interim Order shall control.

**I.      Authority to Engage in Sales and Conduct Store Closings.**

4.      The Debtor is authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue, commence, and conduct

Closing Sales at the Closing Stores[2] in accordance with this Interim Order and the Sale Guidelines, as may be modified by any Side Letters (as defined below) between the Debtors and the landlords at the Closing Stores.

5.       The Sale Guidelines are approved in their entirety on an interim basis.

6.       The Debtor is authorized to discontinue operations at the Closing Stores in accordance with this Interim Order and the Sale Guidelines.

7.       Neither the Debtor nor any of its officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Closing Sales and to take the related actions authorized herein.

## II.       Conduct of the Sales.

8.       Subject to the Dispute Resolution Procedures provided for in this Interim Order, the Debtor is hereby authorized to take such actions as may be necessary and appropriate to conduct the Closing Sales without necessity of further order of this Court as provided in the Sale Guidelines (subject to any Side Letters), including, but not limited to, advertising the Close Sales as a "store closing sale", "sale on everything", "everything must go", "going-out-of-business", or similar-themed sales as contemplated in the Sale Guidelines.

9.       Except as expressly provided in the Sale Guidelines, the sale of the Closing Store Assets shall be conducted by the Debtor, notwithstanding any Contractual Restrictions to the contrary.  Any and all Contractual Restrictions shall not be enforceable in conjunction with the

---

[2] The authority provided to the Debtor to conduct Store Closing Sales at the Closing Stores shall not require the Debtor to conduct a Store Closing Sale at each Closing Store.  The Debtor, in the reasonable exercise of its business judgment, may determine to close a Closing Store without conducting a Store Closing Sale, and may transfer the assets from such a store to another store, whether or not such a store is a Closing Store.  The closing of a Closing Store shall be in compliance with the terms of this Interim and the Sale Guidelines.

Store Closing Sales and the Sales.  Any breach of any such provisions in this chapter 11 case in conjunction with the Store Closings or the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Store Closing Sales are conducted in accordance with the terms of this Interim Order, any Side Letter, and the Sale Guidelines.  The Debtor and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as between the Debtor and any such landlords, *provided* that nothing in such Side Letters affects the provisions of this Interim Order. In the event of any conflict between the Sale Guidelines, any Side Letter, and this Interim Order, the terms of such Side Letter shall control.  Copies of any Side Letters will be provided to the U.S. Trustee, Lemery Greisler LLP, and any statutory committee of unsecured creditors at least two (2) business days' prior to execution of any Side Letters (which period may be shortened or waived if so consented to by the U.S. Trustee, Lemery Greisler LLP, and any statutory committee of unsecured creditors).

10.    Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, the Sales, or the sale of the Closing Store Assets, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings Sales and the Sales, and/or (b) instituting any action or proceeding in any court (other than in this Court) or

administrative body seeking an order or judgment against, among others, the Debtor or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales, the Sales, or the sale of the Closing Store Assets or other liquidation sales at any Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

11.     The Debtor is directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, *provided* that, in the case of a *bona fide* dispute, the Debtor is only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtor shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

12.     Pursuant to section 363(f) of the Bankruptcy Code, the Debtor is authorized to sell the Closing Store Assets, and all sales of Closing Store Assets shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Closing Store Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Closing Store Assets, subject to any claims and defenses that the Debtor may possess with respect thereto.

13.     The Debtor is authorized and empowered to transfer Closing Store Assets among and into the Debtor's store locations in accordance with the Sale Guidelines, as applicable.

14.     Nothing herein shall limit the Debtor's right to suspend, postpone, or discontinue a Store Closing Sale at one or more Closing Stores on notice to affected parties.

15.     Nothing herein is intended to affect any rights of any applicable Government Unit to enforce any law affecting the Debtor's conduct of any store closing sale that occurred before the Petition Date.

**III.     Dispute Resolution Procedures with Governmental Units.**

16.     The Store Closing Sales and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").  Nothing in this Interim Order, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order.  Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that

enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Interim

Order shall be deemed to have made any rulings on any such issues.

17.    To the extent that the sale of Closing Store Assets is subject to any Liquidation Sale

Laws, the following provisions of this paragraph 17 shall apply and control over any Side Letters:

     i.    Provided that the Sales are conducted in accordance with this Interim Order and the Sale Guidelines, the Debtor and the Debtor's landlords shall be deemed to be in compliance with any requirements of all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closing Sales or the Sales; *provided*, that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtor shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Interim Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

    ii.    Within five business days after entry of this Interim Order, or as soon as reasonably practicable thereafter, the Debtor will serve by first-class mail, copies of this Interim Order, the proposed Final Order, and the Sale Guidelines on the following:  (a) the Attorney General's office for each state where the Store Closing Sales are being held, and (b) the landlords for the Closing Stores; (collectively, the "Dispute Notice Parties").

    iii.    To the extent that there is a dispute arising from or relating to the Store Closing Sales, the Sales, this Interim Order, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten days following entry of this Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Barclay Damon LLP, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, New York 13202 (Attn: Jeffrey A. Dove); (b) Lemery Greisler LLC, 677 Broadway, 8th Floor, Albany, New York 12207 (Attn: Meghan Breen and Paul Levine); (c) the United States Trustee for the Northern District of New York, 10 Broad Street, Utica, New York 13501 (Attn:  Erin Champion); (d) counsel to any statutory committee appointed in this chapter 11 case; and (g) the affected landlord or its known counsel.  If the Debtor and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv.   If a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtor, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Interim Order, nor the conduct of the Debtor pursuant to this Interim Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Interim Order or to limit or interfere with the Debtor's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order absent further order of the Court. Upon the entry of this Interim Order, the Court expressly authorizes the Debtor to conduct the Store Closing Sales pursuant to the terms of the Interim Order and the Sale Guidelines (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Interim Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v.    If, at any time, a dispute arises between the Debtor and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iii) and (iv) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

18.    Subject to paragraphs 16 and 17 above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Store Closing Sales or the Sales shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtor be required to post any bond, to conduct the Store Closing Sales.

19.    Provided that the Store Closings and the Sales are conducted in accordance with the terms of this Interim Order and the Sale Guidelines (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized

to conduct the Store Closing Sales and the Sales in accordance with the terms of this Interim Order

and the Sale Guidelines (as may be modified by Side Letters) without the necessity of further

showing compliance with any such Liquidation Sale Laws.

20.     Nothing in this Interim Order, the Sale Guidelines, or any Side Letter releases,

nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental

laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive

relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property

after the date of entry of this Interim Order.  Nothing contained in this Interim Order, the Sale

Guidelines, or any Side Letter shall in any way:  (a) diminish the obligation of any entity to comply

with environmental laws; or (b) diminish the obligations of the Debtor to comply with

environmental laws consistent with their rights and obligations as debtors in possession under the

Bankruptcy Code.

## V.     Other Provisions.

21.     Notwithstanding the relief granted in this Interim Order and any actions taken

pursuant to such relief, nothing in this Interim Order shall be deemed:  (a) an admission as to the

validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim;

(d) an implication or admission that any particular claim is of a type specified or defined in this

Interim Order or the Motion; (e) an authorization to assume any agreement, contract, or lease,

pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's, or any

other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a

concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that

may be satisfied pursuant to the Motion or this Interim Order are valid, and the rights of all parties

are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

22.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtor under the terms of each interim and final order (the "DIP Orders") entered by the Court in respect of the Debtor's *Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Debtor in Possession Financing* (the "Cash Collateral/DIP Motion"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders and to the extent of any conflict or inconsistency between this Interim Order and the DIP Orders, the DIP Orders shall govern and control.

23.     On a confidential basis and upon the written (including email) request of the U.S. Trustee or any official committee of unsecured creditors appointed in this chapter 11 case, the Debtor shall provide copies of periodic reports on a monthly basis concerning the Store Closing Sales that are prepared by the Debtor or its professionals; *provided*, however, that the foregoing shall not require the Debtor or their professionals to prepare or undertake to prepare any additional or new reports other than the weekly Store Closing Sales reports.

24.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

25.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

26.     Notwithstanding any Bankruptcy Rule to the contrary, this Interim Order shall be effective and enforceable immediately upon entry hereof.

27.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

28.     The Debtor shall serve a copy of this Interim Order and the Motion on (a) the Office of the United States Trustee for the Northern District of New York, (b) counsel for Community Bank, N.A., (c) the United States Small Business Administration (or its counsel), (d) the landlord (or its counsel) for each Closing Store, (e) the Attorney General for each state in which a Store Closing Sale will be conducted, and (f) all parties having filed a request for service of papers and pleading in this case.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

# # #

# **Schedule 1**

## **Closing Stores**

| Store No. | Store Location | Landlord / Owner | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| 111 | 2150 Fairport Nine Mile Road Penfield, NY 14450 | Ming Fen Chen | 90 Bentbrook Circle | Webster | NY | 14580 |
| | | | | | | |
| 201 | 1131 Tolland Turnpike Manchester, CT 06042 | The Plaza at Burr Corners, LLC | c/o Winstanley Property Management, LLC 150 Baker Avenue Extension, Suite 303 | Concord | MA | 01742 |
| 202 | 3153 Berlin Turnpike Newington, CT 06111 | McBride Properties, Inc. | 3153 Berlin Turnpike | Newington | CT | 06111 |
| 203 | 75 Queen Street Southington, CT 06489 | Southington/Route 10 Associates Limited Partnership | c/o Cornerstone Properties, Inc. 231 Farmington Avenue | Farmington | CT | 06032 |
| 204 | 1439 Post Road East Westport, CT 06880 | Todd Corporation | 90 Grove Street Suite, 101 | Ridgefield | CT | 06877 |
| 205 | 17 East Putnam Avenue Greenwich, CT 06830 | 7-19 East Putnam Avenue LLC | One Greenwich Office Park South, Third Floor, Suite 350 | Greenwich | CT | 06831 |
| 206 | 769-B Bridgeport Avenue Shelton, CT 06484 | FS Shelton, LLC | 2 Corporate Drive, Suite 441 | Shelton | CT | 06484 |
| 207 | 3475 Berlin Turnpike Newington, CT 06111 | G2G3 Newington, LLC | 100 Westport Avenue | Norwalk | CT | 06851 |
| 208 | 60 East Main Street Avon, CT 06001 | Avon Properties, LLC | 56 East Main Street | Avon | CT | 06001 |
| 209 | 410 Universal Drive, Unit #4 North Haven, CT 06473 | Brixmor GA North Haven Crossings, LLC | c/o Brixmor Property Group P.O. Box 645341 | Cincinnati | OH | 45264 |
| 210 | 21-B Killingworth Turnpike Clinton, CT 06413 | Indian River Shops LLC | P.O. Box 188 | West Mystic | CT | 06388 |
| 211 | 132 Federal Road, Suite A1 Danbury, CT 06811 | Nordan LLC | P.O. Box 535 | Danbury | CT | 06810 |
| 212 | 143 River Road Lisbon, CT 06351 | River Road I LLC | 10 Park Row West, Suite 416 | Providence | RI | 02903 |
| 213 | 507 Boston Post Road Orange, CT 06477 | New Post Properties LLC | 7 Penny Lane | Woodbridge | CT | 06525 |
| | | | | | | |
| 301 | 310 Louden Road Concord, NH 03301 | CP Concord, LLC | 433 South Main Street, Suite 219 | West Hartford | CT | 06110 |
| 302 | 1600 Woodbury Avenue Portsmouth, NH, 03801 | Durgin Square LLC | 633 Tremont Square | Boston | MA | 02118 |
| | | | | | | |
| 350 | 140 Worcester Road Framingham, MA 01702 | Perseid Framingham #1, LLC | c/o Perseid Properties A, LLC, 1666 Massachusetts Avenue | Lexington | MA | 02420 |
| 351 | 339 Broadway, Saugus, MA 01702 | Saugus Realty Co. LP | c/o Finard Properties, LLC 545 Boylston Street, 11th Floor | Boston | MA | 02116 |
| 352 | 150 Highland Avenue Seekonk, MA 02771 | D'Angelo, Inc. | P.O. Box 519 | West Bridgewater | MA | 02379 |
| 353 | 8116 Shops Way Northborough, MA 01532 | RPT Northboro LLC | P.O. Box 30344 | Tampa | FL | 33630 |
| 354 | 10 Watertower Place Leominster, MA 01453 | Brixmor Property Group | 450 Lexington Avenue, 13th Floor | New York | NY | 10017 |
| | | | | | | |
| 401 | 473 Putnam Pike, Suite B-3 Smithfield, RI 02828 | CGRI Greenville, LLC | 1414 Atwood Avenue | Johnston | RI | 02919 |
| 402 | 1386 Atwood Avenue Johnston, RI 02919 | 195 Associates, LLC | 1414 Atwood Avenue | Johnston | RI | 02919 |
| 403 | 84 Gate Road, Suite 120 North Kingstown, RI 02852 | CGRI Quonset LLC | 1414 Atwood Avenue | Johnston | RI | 02919 |

## Schedule 2

## Sale Guidelines

## Sale Guidelines[4]

1.      The authority provided to the Debtor to conduct Store Closing Sales at the Closing Stores shall not require the Debtor to conduct a Store Closing Sale at each Closing Store.  The Debtor, in the reasonable exercise of its business judgment, may determine to close a Closing Store without conducting a Store Closing Sale, and may transfer the assets from such a store to another store, whether or not such a store is a Closing Store.  The closing of a Closing Store shall be in compliance with the terms of the Interim or Final Order and these Sale Guidelines.

2.      At the conclusion of a Store Closing Sale at a Closing Store, the Debtor shall vacate the Closing Store.

3.      The Debtor may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales.  The Debtor may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.

4.      The Debtor shall be permitted to utilize displays, hanging signs, and interior banners in connection with the Sales; *provided* that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Debtors shall not use neon or day-glo on its display, hanging signs, or interior banners.

5.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

6.      The Debtor shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Store Closing Sales.  The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

7.      The Debtor shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

8.      The Debtor and the landlord of any Closing Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

9.      At the conclusion of the Store Closing Sales at each Closing Store, pending the effective date of rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Debtor and their representatives shall continue to have access to the Closing Stores pending the effective date of rejection of applicable leases.

---

[4] Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief*.

10.    The rights of landlords against Debtor for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

11.    If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtor is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery to the Debtor and its counsel.

# **<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

-------------------------------------------------------------- x
In re:                                                      :    Chapter 11
                                                            :
        METRO MATTRESS CORP.                                :    Case No. 24-_____ (___)
                                                            :
                                    Debtor.                 :
-------------------------------------------------------------- x

**FINAL ORDER (I) AUTHORIZING AND APPROVING
THE CONDUCT OF STORE CLOSING SALES, WITH SUCH SALES
TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND
ENCUMBRANCES, AND (II) GRANTING RELATED RELIEF**

Upon the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances,, and (II) Granting Related Relief* (the "Motion"),[1] seeking entry of a final order (this "Final Order"):  (a) authorizing and approving the continuation or initiation of store closing or similar themed sales (the "Store Closing Sales") at the stores identified on **Schedule 1** attached hereto (collectively, the "Closing Stores"); (b) providing that such sales shall

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

be free and clear of all liens, claims, and encumbrances (the "Sales"), in accordance with the terms

of the store closing sale guidelines (the "Sale Guidelines"), attached as **Schedule 2** hereto; and

(c) granting related relief, all as more fully set forth in the Motion; and upon the First Day

Declaration; and the Court having jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that venue of this

proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the Debtor's notice of the Motion was appropriate under the

circumstances and no other notice need be provided; and this Court having reviewed the Motion

and having heard the statements in support of the relief requested therein at a hearing before this

Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had

before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY**

**FOUND AND DETERMINED THAT**:[1]

A.    The Debtor has advanced sound business reasons for adopting the Sale Guidelines,

on final basis, as set forth in the Motion and at the Hearing.

B.    The Sale Guidelines, which are attached hereto as **Schedule 2**, are reasonable and

appropriate, and the conduct of the Sales in accordance with the Sale Guidelines will provide an

efficient means for the Debtor to dispose of the Closing Store Assets, and are in the best interest

of the Debtor's estate.

C.    The relief set forth herein is necessary to avoid immediate and irreparable harm to

the Debtor and its estate and the Debtor has demonstrated good, sufficient, and sound business

purposes and justifications for the relief approved herein.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact where appropriate.  *See* Fed. R. Bankr. P. 7052.

D.      The Store Closing Sales are in the best interest of the Debtor's estate.

E.      The Dispute Resolution Procedures are fair and reasonable and comply with applicable law.

F.      The entry of this Final Order is in the best interests of the Debtor and its estate, creditors, and interest holders and all other parties in interest herein; and now therefore it is

**HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on an final basis to the extent set forth herein.

2.      To the extent any conflict between this Final Order and the Sale Guidelines, the terms of this Final Order shall control.

**I.      Authority to Engage in Sales and Conduct Store Closings.**

3.      The Debtor is authorized, on a final basis, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue, commence, and conduct Closing Sales at the Closing Stores[2] in accordance with this Final Order and the Sale Guidelines, as may be modified by any Side Letters (as defined below) between the Debtor and the landlords at the Closing Stores.

4.      The Sale Guidelines are approved in their entirety on a final basis.

5.      The Debtor is authorized to discontinue operations at the Closing Stores in accordance with this Final Order and the Sale Guidelines.

6.      Neither the Debtor nor any of its officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as

---

[2] The authority provided to the Debtor to conduct Store Closing Sales at the Closing Stores shall not require the Debtor to conduct a Store Closing Sale at each Closing Store.  The Debtor, in the reasonable exercise of its business judgment, may determine to close a Closing Store without conducting a Store Closing Sale, and may transfer the Closing Store Assets from such store to another store, whether or not such store is a Closing Store.  The closing of a Closing Store shall be in compliance with the terms of this Final Order and the Sale Guidelines.

defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Closing Sales and to take the related actions authorized herein.

## II.    Conduct of the Sales.

7.    Subject to the Dispute Resolution Procedures provided for in this Final Order, the Debtor is hereby authorized to take such actions as may be necessary and appropriate to conduct the Closing Sales without necessity of further order of this Court as provided in the Sale Guidelines (subject to any Side Letters), including, but not limited to, advertising the Close Sales as a "store closing sale", "sale on everything", "everything must go", "going-out-of-business", or similar-themed sales as contemplated in the Sale Guidelines.

8.    Except as expressly provided in the Sale Guidelines, the sale of the Closing Store Assets shall be conducted by the Debtor, notwithstanding any Contractual Restrictions to the contrary.  Any and all Contractual Restrictions shall not be enforceable in conjunction with the Store Closing Sales and the Sales.  Any breach of any such provisions in this chapter 11 case in conjunction with the Store Closings or the Store Closing Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Store Closing Sales are conducted in accordance with the terms of this Final Order, any Side Letter, and the Sale Guidelines.  The Debtor and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as between the Debtor and any such landlords, *provided* that nothing in such Side Letters affects the provisions of this Final Order.  In the event of any conflict between the Sale Guidelines, any Side Letter, and this Final Order, the terms of such Side Letter shall control.  Copies of any Side Letters will be provided to the U.S. Trustee, Lemery Greisler LLP, and any statutory committee of unsecured creditors at least two (2) business

days' prior to execution of any Side Letters (which period may be shortened or waived if so consented to by the U.S. Trustee, Lemery Greisler LLP, and any statutory committee of unsecured creditors).

9.      Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, the Sales, or the sale of the Closing Store Assets, and all such parties and persons and entities of every nature and description, including, but not limited to, any landlord, subtenant, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings Sales and the Sales, and/or (b) instituting any action or proceeding in any court (other than in this Court) or administrative body seeking an order or judgment against, among others, the Debtor or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales, the Sales, or the sale of the Closing Store Assets or other liquidation sales at any Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

10.     The Debtor is directed to remit all taxes arising from the Store Closing Sales to the applicable Governmental Units as and when due, *provided* that, in the case of a *bona fide* dispute, the Debtor is only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtor shall not be used to pay any creditor

or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state or federal law.

11.     Pursuant to section 363(f) of the Bankruptcy Code, the Debtor is authorized to sell the Closing Store Assets, and all sales of Closing Store Assets shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Closing Store Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Closing Store Assets, subject to any claims and defenses that the Debtor may possess with respect thereto.

12.     The Debtor is authorized and empowered to transfer Closing Store Assets among and into the Debtor's store locations in accordance with the Sale Guidelines, as applicable.

13.     Nothing herein shall limit the Debtor's right to suspend, postpone, or discontinue a Store Closing Sale at one or more Closing Stores.

14.     Nothing herein is intended to affect any rights of any applicable Government Unit to enforce any law affecting the Debtor's conduct of any store closing sale that occurred before the Petition Date.

**III.     Dispute Resolution Procedures with Governmental Units.**

16.     The Store Closing Sales and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of sales taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive

practices and false advertising, the sale of gift certificates, layaway programs, return of goods, express or implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws").  Nothing in this Final Order, the Sale Guidelines, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's rights to assert in that forum or before this Court, that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

     17.    To the extent that the sale of Closing Store Assets is subject to any Liquidation Sale Laws, the following provisions of this paragraph 17 shall apply and control over any Side Letters:

    i.    Provided that the Sales are conducted in accordance with this Final Order and the Sale Guidelines, the Debtor and the Debtor's landlords shall be deemed to be in compliance with any requirements of all county, parish, municipal, or other local government (collectively, "Local") and state Liquidation Sale Laws that would otherwise apply to the Store Closing Sales or the Sales; *provided*, that the term "Liquidation Sale Laws" shall not include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtor shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Final Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

    ii.    Within five business days after entry of this Final Order, or as soon as reasonably practicable thereafter, the Debtor will serve by first-class mail, copies of this Final Order, the proposed Final Order, and the Sale Guidelines

7

on the following: (a) the Attorney General's office for each state where the Store Closing Sales are being held; and (b) the landlords for the Closing Stores; (collectively, the "Dispute Notice Parties").

iii. To the extent that there is a dispute arising from or relating to the Store Closing Sales, the Sales, this Final Order, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten days following entry of this Final Order, any Governmental Unit may assert that a Reserved Dispute exists by serving a notice (the "Dispute Notice") explaining the nature of the dispute on: (a) Barclay Damon LLP, Barclay Damon Tower, 125 East Jefferson Street, Syracuse, New York 13202 (Attn: Jeffrey A. Dove); (b) Lemery Greisler LLC, 677 Broadway, 8th Floor, Albany, New York 12207 (Attn: Meghan Breen and Paul Levine) (c) the United States Trustee for the Northern District of New York, 10 Broad Street, Room 105, Utica, New York 13501 (Attn: Erin Champion); (d) counsel to any statutory committee appointed in this chapter 11 case; and (e) the affected landlord or its known counsel. If the Debtor and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv. If a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtor, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Final Order, nor the conduct of the Debtor pursuant to this Final Order, violates such Liquidation Sale Laws. The filing of a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtor's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order absent further order of the Court. Upon the entry of this Final Order, the Court expressly authorizes the Debtor to conduct the Store Closing Sales pursuant to the terms of the Final Order and the Sale Guidelines (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v. If, at any time, a dispute arises between the Debtor and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of

subparagraphs (iii) and (iv) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

18.    Subject to paragraphs 16 and 17 above, each and every federal, state, or local agency, department, or Governmental Unit with regulatory authority over the Store Closing Sales or the Sales shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtor be required to post any bond, to conduct the Store Closing Sales.

19.    Provided that the Store Closings and the Sales are conducted in accordance with the terms of this Final Order and the Sale Guidelines (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closing Sales and the Sales in accordance with the terms of this Final Order and the Sale Guidelines (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

20.    Nothing in this Final Order, the Sale Guidelines, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order, the Sale Guidelines, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtor to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

## V.    Other Provisions.

21.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) an authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion or this Final Order are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

22.    Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtor under the terms of each interim and final order (the "DIP Orders") entered by the Court in respect of the Debtor's *Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Debtor in Possession Financing* (the "Cash Collateral/DIP Motion"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders and to the extent of any

conflict or inconsistency between this Final Order and the DIP Orders, the DIP Orders shall govern and control.

23.     On a confidential basis and upon the written (including email) request of the U.S. Trustee or any official committee of unsecured creditors appointed in this chapter 11 case, the Debtor shall provide copies of periodic reports on a monthly basis concerning the Store Closing Sales that are prepared by the Debtor or its professionals; *provided*, however, that the foregoing shall not require the Debtor or their professionals to prepare or undertake to prepare any additional or new reports other than the weekly Store Closing Sales reports.

24.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

25.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

26.     Notwithstanding any Bankruptcy Rule to the contrary, this Final Order shall be effective and enforceable immediately upon entry hereof.

27.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

28.     The Debtor shall serve a copy of this Final Order on (a) the Office of the United States Trustee for the Northern District of New York, (b) counsel for Community Bank, N.A., (c) the United States Small Business Administration (or its counsel), (d) the landlord (or its counsel) for each Closing Store, (e) the Attorney General for each state in which a Store Closing Sale will be conducted, and (f) all parties having filed a request for service of papers and pleading in this case.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# # #

## Schedule 1

**Closing Stores**

| Store No. | Store Location | Landlord / Owner | Address | City | State | Zip |
|---|---|---|---|---|---|---|
| 111 | 2150 Fairport Nine Mile Road Penfield, NY 14450 | Ming Fen Chen | 90 Bentbrook Circle | Webster | NY | 14580 |
| | | | | | | |
| 201 | 1131 Tolland Turnpike Manchester, CT 06042 | The Plaza at Burr Corners, LLC | c/o Winstanley Property Management, LLC 150 Baker Avenue Extension, Suite 303 | Concord | MA | 01742 |
| 202 | 3153 Berlin Turnpike Newington, CT 06111 | McBride Properties, Inc. | 3153 Berlin Turnpike | Newington | CT | 06111 |
| 203 | 75 Queen Street Southington, CT 06489 | Southington/Route 10 Associates Limited Partnership | c/o Cornerstone Properties, Inc. 231 Farmington Avenue | Farmington | CT | 06032 |
| 204 | 1439 Post Road East Westport, CT 06880 | Todd Corporation | 90 Grove Street Suite, 101 | Ridgefield | CT | 06877 |
| 205 | 17 East Putnam Avenue Greenwich, CT 06830 | 7-19 East Putnam Avenue LLC | One Greenwich Office Park South, Third Floor, Suite 350 | Greenwich | CT | 06831 |
| 206 | 769-B Bridgeport Avenue Shelton, CT 06484 | FS Shelton, LLC | 2 Corporate Drive, Suite 441 | Shelton | CT | 06484 |
| 207 | 3475 Berlin Turnpike Newington, CT 06111 | G2G3 Newington, LLC | 100 Westport Avenue | Norwalk | CT | 06851 |
| 208 | 60 East Main Street Avon, CT 06001 | Avon Properties, LLC | 56 East Main Street | Avon | CT | 06001 |
| 209 | 410 Universal Drive, Unit #4 North Haven, CT 06473 | Brixmor GA North Haven Crossings, LLC | c/o Brixmor Property Group P.O. Box 645341 | Cincinnati | OH | 45264 |
| 210 | 21-B Killingworth Turnpike Clinton, CT 06413 | Indian River Shops LLC | P.O. Box 188 | West Mystic | CT | 06388 |
| 211 | 132 Federal Road, Suite A1 Danbury, CT 06811 | Nordan LLC | P.O. Box 535 | Danbury | CT | 06810 |
| 212 | 143 River Road Lisbon, CT 06351 | River Road I LLC | 10 Park Row West, Suite 416 | Providence | RI | 02903 |
| 213 | 507 Boston Post Road Orange, CT 06477 | New Post Properties LLC | 7 Penny Lane | Woodbridge | CT | 06525 |
| | | | | | | |
| 301 | 310 Louden Road Concord, NH 03301 | CP Concord, LLC | 433 South Main Street, Suite 219 | West Hartford | CT | 06110 |
| 302 | 1600 Woodbury Avenue Portsmouth, NH, 03801 | Durgin Square LLC | 633 Tremont Square | Boston | MA | 02118 |
| | | | | | | |
| 350 | 140 Worcester Road Framingham, MA 01702 | Perseid Framingham #1, LLC | c/o Perseid Properties A, LLC, 1666 Massachusetts Avenue | Lexington | MA | 02420 |
| 351 | 339 Broadway, Saugus, MA 01702 | Saugus Realty Co. LP | c/o Finard Properties, LLC 545 Boylston Street, 11th Floor | Boston | MA | 02116 |
| 352 | 150 Highland Avenue Seekonk, MA 02771 | D'Angelo, Inc. | P.O. Box 519 | West Bridgewater | MA | 02379 |
| 353 | 8116 Shops Way Northborough, MA 01532 | RPT Northboro LLC | P.O. Box 30344 | Tampa | FL | 33630 |
| 354 | 10 Watertower Place Leominster, MA 01453 | Brixmor Property Group | 450 Lexington Avenue, 13th Floor | New York | NY | 10017 |
| | | | | | | |
| 401 | 473 Putnam Pike, Suite B-3 Smithfield, RI 02828 | CGRI Greenville, LLC | 1414 Atwood Avenue | Johnston | RI | 02919 |
| 402 | 1386 Atwood Avenue Johnston, RI 02919 | 195 Associates, LLC | 1414 Atwood Avenue | Johnston | RI | 02919 |
| 403 | 84 Gate Road, Suite 120 North Kingstown, RI 02852 | CGRI Quonset LLC | 1414 Atwood Avenue | Johnston | RI | 02919 |

**<u>Schedule 2</u>**

**Sale Guidelines**

## Sale Guidelines[4]

1.    The authority provided to the Debtor to conduct Store Closing Sales at the Closing Stores shall not require the Debtor to conduct a Store Closing Sale at each Closing Store. The Debtor, in the reasonable exercise of its business judgment, may determine to close a Closing Store without conducting a Store Closing Sale, and may transfer the assets from such a store to another store, whether or not such a store is a Closing Store. The closing of a Closing Store shall be in compliance with the terms of the Interim or Final Order and these Sale Guidelines.

2.    At the conclusion of a Store Closing Sale at a Closing Store, the Debtor shall vacate the Closing Store.

3.    The Debtor may advertise the Sales as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales. The Debtor may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Guidelines.

4.    The Debtor shall be permitted to utilize displays, hanging signs, and interior banners in connection with the Sales; *provided* that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Debtors shall not use neon or day-glo on its display, hanging signs, or interior banners.

5.    Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

6.    The Debtor shall not make any alterations to interior or exterior Closing Store lighting, except as authorized by the applicable lease. No property of the landlord of a Closing Store shall be removed or sold during the Store Closing Sales. The hanging of exterior banners or in-Closing Store signage and banners shall not constitute an alteration to a Closing Store.

7.    The Debtor shall keep Closing Store premises and surrounding areas clear and orderly consistent with present practices.

8.    The Debtor and the landlord of any Closing Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

9.    At the conclusion of the Store Closing Sales at each Closing Store, pending the effective date of rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Debtor and their representatives shall continue to have access to the Closing Stores pending the effective date of rejection of applicable leases.

---

[4] Capitalized terms used but not defined in these Sale Guidelines have the meanings given to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances, and (II) Granting Related Relief.*

10.    The rights of landlords against Debtor for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

11.    If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtor is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery to the Debtor and its counsel.